IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JUAN J. GARCÍA-LEDESMA**, <br><br> Plaintiff, <br><br> v. <br><br> **JOYERÍA ORO CENTRO**, *doing business as* Oro Centro, *also known as* J.C. Jeweler's, Inc., *et al.*, <br><br> Defendants. | Civil No. 10-1577 (BJM) |

## OPINION AND ORDER

Juan J. García-Ledesma ("García") sued Joyería Oro Centro, also known as J.C. Jeweler's, Inc. ("JCJ") and Josué Carrión-Carrero ("Carrión"), as well as an unnamed insurance company, alleging employment discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and Law No. 100 of June 30, 1959 ("Law 100"), 29 L.P.R.A. §§ 146 *et seq.*, as well as unjust dismissal in violation of Law No. 80 of May 30, 1976 ("Law 80"), 29 L.P.R.A. §§ 185a *et seq.*, and tort liability under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142. (Docket No. 1). In addition to federal question jurisdiction under 28 U.S.C. § 1331, García's complaint invokes diversity jurisdiction under 28 U.S.C. § 1332, asserting that he is a citizen of New Jersey and that the amount in controversy is over $75,000. (Docket No. 1, ¶¶ 5-7). García has since voluntarily dismissed his action against Carrión. (Docket No. 23).

Before the court is JCJ's motion for summary judgment on all claims. (Docket No. 41). García opposed (Docket No. 50) and JCJ replied (Docket No. 61). García also moved to strike Carrión's statement under penalty of perjury (Docket No. 48), which JCJ opposed (Docket No. 43). JCJ filed an unopposed motion to deem its statement of facts to be admitted. (Docket No.

62). This case is before me by consent of the parties. (Docket No. 54). For the reasons that follow, JCJ's motion for summary judgment is **granted in part**, while the motions to strike Carrión's statement and to deem admitted JCJ's statement of facts are **denied**.

## MOTION TO STRIKE CARRIÓN'S STATEMENT UNDER PENALTY OF PERJURY

García moves to strike Carrión's statement under penalty of perjury, arguing that JCJ failed to disclose the statement as an initial disclosure of documentary evidence under Rule 26(a)(1)(A). (Docket No. 48, p. 1-3). This position is a non-starter.

As JCJ correctly observes, the statement was executed on July 19, 2011, and filed only a day later on July 20. This is not a document that was in the "possession, custody, or control" of JCJ prior to that date. See Fed. R. Civ. P. 26(a)(1)(A)(ii). And to whatever extent the duty to disclose the statement was even triggered, Rule 37(c)(1) does not require exclusion where the nondisclosure was "substantially justified" or "harmless." Relevant factors in deciding whether exclusion of evidence is proper under this rule include: "the sanctioned party's justification for the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket; and the sanctioned party's need for the precluded evidence." Harriman v. Hancock County, 627 F.3d 22, 30 (1st Cir. 2010).

García laments that the statement was offered at a "late stage, after the conclusion of the discovery process . . . ." (Docket No. 48, p. 3). But on July 14, 2011, the court granted an extension of discovery until August 7 *for the sole purpose of taking Carrión's deposition*. (Docket No. 40). Indeed, García represented to the court that the parties agreed to hold this deposition in "the first week of August." (Docket No. 39). García's motion to strike never indicates that JCJ reneged on the agreement or otherwise prevented Carrión from being deposed. The docket does not suggest otherwise: García served no subpoenas, filed no motions to compel,

and did not request additional time to conduct the deposition.  Nor did García seek an extension of time to oppose summary judgment in order to take and use the deposition.  Of course, crafting a statement at the close of discovery to support summary judgment could be an abusive tactic if, for instance, Carrión's status as a witness were not disclosed to García.  But that is not the case here, and I cannot discern how JCJ "thwart[ed] Plaintiff's right to conduct discovery and question Mr. Carrión-Carrero about the statements therein provided."  García's motion to strike is **DENIED.**

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are summarized here after applying Local Rule 56, which structures the presentation of proof at summary judgment.[1]

### *García's Relationship to the Carrión Family and the "Oro Centro" Businesses*

García is a single adult citizen of the United States, now living in New Jersey. (Docket No. 50-1, hereinafter "Pl. St.," ¶ C).[2]  García considers himself "African-American or Black."

---

[1] The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007).  The penalty for noncompliance is severe: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id.  Thus, litigants ignore the rule "at their peril." Id.
   A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b).  The opposing party must admit, deny, or qualify the moving party's facts by reference to each numbered paragraph, and may make a separately numbered statement of material facts. Local Rule 56(c).  The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph.  Local Rule 56(d). Any facts supported by citation to record evidence and not properly controverted as described by the rule are deemed admitted. Local Rule 56(e).
   JCJ moved to deem its statement of facts unopposed and admitted under Local Rule 56.  (Docket No. 62).  While I have taken its objections to García's statement into account, I do not find García's opposition so deficient that JCJ is entitled to admission of its statement in its entirety.  Therefore, the motion is **DENIED**.
   [2] JCJ raises two on-point objections to García's reliance on his verified complaint as summary judgment evidence.  First, like other affidavits or declarations at summary judgment, García's verified complaint "must be made on personal knowledge, set out *facts* that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added).  Thus, I have disregarded those portions of the complaint that assign legal labels in the guise of fact or relate conclusions he is plainly not qualified to make.  (See, e.g., Docket No. 1, ¶ 14) ("García's physical and mental impairments or disabilities *substantially limit* one or more major life activities . . . .") (emphasis added).  And second, García's

(Pl. St., ¶ G). JCJ is a company owning and operating pawn shops in Bayamón, Carolina, Santurce, and Ponce. (Docket No. 41-1, hereinafter "Def. St.," ¶ 1). At the time of the complained-of events, Carrión was JCJ's sole shareholder and president. (Def. St., ¶ 2). "Oro Centro Express" is the name used by two businesses owned by corporations controlled by Carrión's siblings, Jeannie Carrión-Carrero ("Jeannie Carrión") and César Carrión-Carrero. (Def. St., ¶ 6). Jeannie Carrión worked for JCJ between August 2002 and May 2003. (Def. St., ¶ 9). Neither Carrión nor JCJ own either Oro Centro Express. (Def. St., ¶ 5). Jeannie Carrero-Ramos ("Carrero") is the Carrión siblings' mother. (Def. St., ¶ 9). Carrero worked for JCJ between August and December 2002. (Def. St., ¶ 9). To prove that Carrión and Carrero both use the name "Oro Centro," García submitted unlabeled photos of various "Oro Centro" storefronts, a sign, a logo, and an advertisement.[3] (Pl. St., ¶ B; Docket No. 50-2).

García testified that he began working for JCJ sometime in 2001 or 2002, ending in November of 2004 or 2005 with a "strong argument" between himself and Carrión, and returning sometime in 2006 or 2007. (Def. St., ¶ 3).[4] In his verified complaint, García alleged that he "was an employee of Defendant Oro Centro from 1998 through 2009." (Pl. St., ¶ A). JCJ's records indicate that García worked there between August and December 2002, between

---

statement often fails to cite particular portions of the record as required by Fed. R. Civ. P. 56(c)(1) and Local Rule 56(e). (See, e.g., Pl. St., ¶ J) (citing "Exhibit 2: Deposition," an 85-page document).
    JCJ further objects to García's reliance on the verified complaint because the document was not signed by García himself. (Docket No. 60, p. 2-3). But the complaint attaches a sworn statement adopting its allegations, which I find adequate to bring the complaint within Rule 56(c)(4). (See Docket No. 1-1, p. 2).
    [3] García also asserts that "Oro Centro began operations with a store at Rexville in Bayamón at a store that was on the first floor of the house where plaintiff lived with his mother. Listed as JC Jeweler's Inc., DBA Oro Centro in their own letterhead, Oro Centro was later incorporated in Puerto Rico in 2002. See Exhibit: Letterhead at the Verified Complaint." (Pl. St., ¶ D). However, the exhibit appears to be a letter in Spanish for which no translation has been filed, contrary to Local Rule 5(g). The only text that may be admissible as English is a heading that reads "JC JEWELER'S INC. ORO CENTRO," with an address in Bayamón. (Docket No. 3-1). I disregard this statement of fact as unsupported by a citation to record evidence. Local Rule 56(e).
    [4] García objects to the use of his deposition, asserting that the transcript was not produced prior to its inclusion in JCJ's summary judgment motion. But JCJ submitted a May 2, 2011 letter purportedly accompanying a copy of the transcript, and García's counsel has not further represented that such production was inadequate. (Docket No. 61, p. 11 n. 8; Docket No. 61-1). García's counsel also complains of not being provided with a "transcript with key words," but never explains how this was required by any rule of procedure or evidence. In short, this is *not* "reason enough to strike the deposition and the Motion for Summary Judgment." (See Pl. St., p. 1).

December 2004 and May 2005, in December 2005, between February and December 2008, and between January and April 2009. (Def. St., ¶ 4). García returned to work at JCJ in 2006 or 2007. (Id.). He worked for Jeannie's Oro Centro Express between 2007 and 2008. (Def. St., ¶ 7).

*García's Disciplinary History*

García was terminated on April 21 or 22, 2009. (Def. St., ¶ 13). Carrión states that García was terminated because of disciplinary admonishments García received while working for JCJ.[5] (Def. St., ¶ 15). A letter from Pablo Burgos ("Burgos") dated April 3, 2008 outlines eight behaviors that García was instructed not to engage in. (Docket No. 63-1, p. 3). An admonishment form dated August 24, 2008 states "makes contracts and fails to secure merchandise, prompting that same be appropriated" (*sic* throughout) as the reason for admonishment. (Docket No. 63-1, p. 4). Another form, dated August 27, 2008, states it was issued because of a cashbox mismatch of $519 on August 23. (Docket No. 63-1, p. 5). And a third form dated February 3, 2009 states that García twice pawned and purchased articles "which fail to comply with the minimum to be paid for stated transactions, although previously warned regarding this type of situation." (Docket No. 63-1, p. 6). In his deposition, García testified that he recalled writing that "they have forgiven me many mistakes" on the admonition form. (Def. St., ¶ 22).

---

[5] García objects that "these are conclusions sounding in fraud," triggering Fed. R. Civ. P. 9, and that "as conclusions they are also subject to the plausibility standard of *Twombly* and *Iqbal*." (Pl. St. ¶ 16). But JCJ's Local Rule 56 statement is not a complaint, and García never explains how any of these *pleading* rules have any bearing on what a party may offer as *evidence*.
    García challenges the admonishment memos themselves as hearsay. But JCJ correctly points out that it is not introducing the documents to prove that García actually engaged in any of the described conduct, but rather as evidence of the decisionmaker's state of mind—that is, whether an employment action was motivated by discriminatory animus, the stated reason, or by some other perception. (Docket No. 61, p. 6-7). See also Ronda-Pérez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42, 45 (1st Cir. 2005) (in evaluating employer's motive, "the issue is not whether the employer's reasons were real, but merely whether the decisionmakers believed them to be real.").

*García's Working Conditions*

García testified that he has a life-long physical condition causing pain in his hip, making walking difficult, and giving him a limp. (Def. St., ¶ 23). He also alleged that he suffered from unspecified "speech and learning impediments" for which he received therapy and treatment throughout his life, and that he was "substantially limited," without further detail, in "manual tasks, concentration, and [*sic*] speech, running, and complicated tasks," among others. (Pl. St., ¶ E). García's position involved being on his feet, climbing stairs, crouching, and carrying large objects. (Def. St., ¶ 29). He testified that between two and four employees were sometimes required to carry certain objects. (Def. St., ¶ 30). His complaint alleges that he "fully complied with all his duties," and that JCJ imposed some unspecified burden to carry out functions not related to his work, subsequently subjecting him to ridicule. (Pl. St., ¶ J).

García testified that Carrión allowed him a 15-20 minute sitting break when he asked on two occasions. (Def. St., ¶ 26). Carrión stated that he was not aware of any documentary evidence of García's condition or what his physical limitations with respect to "handling heavy objects, climbing stairs, crouching[,] and standing up" were. (Def. St., ¶ 27). Carrión also stated that, whatever García's restrictions might be, another employee would need to be hired to assist García with objects stored upstairs or to deal with heavy objects. (Def. St., ¶ 28).

García testified that sometime in 2004, Carrero called him, among other names, "nigger," "mother-fucking nigger," and "gimp nigger."[6] (Def. St., ¶ 8). García also testified that Carrero "insulted" him, without provocation, sometime in 2008.[7] (Def. St., ¶ 11). In his complaint,

---

[6] JCJ muddles the matter of who stated this by averring that it has never employed a "Jenny Carrión" (the speaker identified in the complaint) but that both Jeannie Carrión-Carrero and her mother, Jeannie Carrero-Ramos, worked for the company. (Def. St., ¶ 9). I accept García's clarification that by "Jenny Carrión," the complaint—and the deposition questions referring to the complaint—meant the Carrión siblings' mother, Jeannie Carrero-Ramos, and not Jeannie Carrión-Carrero.

[7] During the deposition, the questioner referred García to paragraph 25 of the complaint, which alleges that Carrero "accused" García of being gay, and then uttered statements for which no translation was provided.

García stated that he "questioned and complained constantly of the discriminatory and derogative [*sic*] treatment he was always dished out by management at Oro Centro." (Pl. St., ¶ F). García also cites a series of comments in Spanish made by Carrero and Carrión occurring in 2003, 2004, 2008, and 2009. (Pl. St., ¶ F).[8] García filed an EEOC charge in 2009, and received a right-to-sue letter on March 29, 2010. (Pl. St., ¶ I).

*Emotional Damages and Vacation Pay*

García testified that a robbery of the Carolina store affected his emotions and relationships with others. (Def. St., ¶ 31). He had two appointments with a psychologist in the United States to deal with the experience. (Def. St., ¶ 32). He testified that he was not aware of the existence of Puerto Rico's State Insurance Fund, and so never made a claim before it. (Def. St., ¶ 33). JCJ was up to date on its State Insurance Fund premiums. (Def. St., ¶ 44).

García was given vacation leave between March 23 and April 10, 2009. (Def. St., ¶ 38). A check from JCJ to García for $721.70, dated March 23, 2009, was cashed on March 30, 2009. (Def. St., ¶ 39). Carrión stated that this check was for that vacation time. (Def. St., ¶ 39). Another check dated April 28, 2009 for $200.43 was also cashed. (Def. St., ¶ 41). Carrión stated that this was a "liquidation check," and that he did not owe García any additional wages. (Def. St., ¶¶ 41, 43). García testified that he did not have evidence to support his allegations of being owed additional wages. (Def. St., ¶ 42).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

---

[8] García further cites paragraph 35 of his complaint, which states that "Plaintiff García was the recipient of racist pejorative jokes, racist demeaning remarks and insults because of his skin color and of his physical limitations by Carrión, all the while he was employed by Oro Centro and in a continuous manner." (Docket No. 1, ¶ 35). But García is not entitled to avoid summary judgment based on a statement of facts containing "conclusory allegations for which the only evidentiary support is [the verified complaint], which itself contains conclusory allegations." See Méndez-Aponte v. Bonilla, 645 F.3d 60, 68 (1st Cir. 2011) (affirming Rule 11 sanctions). I therefore disregard this statement as unsupported by admissible evidence.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1). Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). Nonetheless, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

García alleges that JCJ (1) failed to provide him with a reasonable accommodation for his

disability, (2) terminated him in retaliation for requesting accommodations, (3) terminated him because of his disability, (5) subjected him to a hostile work environment based on his race and disability, (6) unjustly dismissed him in violation of Law 80, (7) failed to liquidate accumulated vacation and other pay, and (8) is liable in tort. JCJ seeks summary judgment on all claims. I begin by considering JCJ's administrative exhaustion argument, then consider each of García's theories in turn, and conclude with JCJ's argument regarding certain emotional damages.

I.   **Timely Exhaustion of Administrative Remedies**

JCJ argues that, with the exception of those claims arising from his termination, García did not timely exhaust his administrative remedies under Title VII and the ADA. In Puerto Rico, a plaintiff must file an administrative charge within 300 days after the alleged unlawful employment practice occurred. Frederique-Alexandre v. Dep't of Natural and Env'tal Resources, 478 F.3d 433, 437 (1st Cir. 2007); see 42 U.S.C. § 2000e-5(e)(1). Failure to do so is generally a bar to suit. Vera v. McHugh, 622 F.3d 17, 29–30 (1st Cir. 2010) (under Title VII); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999) (under ADA). This reflects a policy of "protect[ing] employers from the burden of defending claims arising from employment decisions that are long past." Delaware State College v. Ricks, 449 U.S. 250, 256-57 (1980). Where there are discrete acts of discrimination, the statute of limitations bars challenges to older employment practices regardless of any relationship among them. Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 33 (1st Cir. 2009) (citing Nat'l R. R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)). But since a hostile work environment is conceptually a single employment practice, the exhaustion requirement does not bar consideration of events that comprise that practice so long as any one discriminatory act occurs within the limitations period. Crowley v. L.L. Bean, Inc., 303 F.3d 387, 406 (1st Cir. 2002) (citing Morgan, 536 U.S. at 116-17).

Pointing to García's September 10, 2009 EEOC charge,[9] JCJ argues that any acts of discrimination that occurred prior to November 14, 2008 are time-barred. But this is only accurate with regard to discrete acts of employment discrimination, and the only discrete actions García challenges are (1) JCJ's alleged denial of his requests for accommodation, and (2) his termination. As will be explained in the next section, his request for accommodation claim fails on the merits, so whether it is also time-barred is irrelevant. On the other hand, JCJ concedes that his termination in April 2009 is well within the federal limitations period.

The relevant question regarding García's hostile environment claim is whether any part of it extends into the limitations period. See Crowley, 303 F.3d at 406. In support of his claim, García cites portions of his verified complaint relating specific comments made by Carrión in 2009 while at JCJ. (See Docket No. 1, ¶¶ 26-27). Although the comments themselves are in Spanish and thus are not admissible evidence, there is an unmistakable racial undertone to the words García highlights, which would anchor his hostile environment claim within the limitations period. (See, e.g., id., ¶ 27) (averring that in 2009, Carrión and store manager Efrain Rivera would "refer[] to him as 'cojo' and 'negro'"). In the interests of doing substantial justice, I grant García a period of **seven (7) days** to file a certified translation of the verified complaint; subject to such translation being filed, he has provided sufficient evidence to avoid summary judgment on timely exhaustion grounds.

In sum, JCJ has not established that any of García's viable federal claims should be dismissed for failure to timely file an administrative charge. I further note that the federal exhaustion and limitations analysis does not apply to García's claims under Puerto Rico Law 100, which contains no exhaustion requirement and applies a different limitations and tolling

---

[9] Although García's prose in the EEOC charge is in Spanish, the form itself is in English and is stamped with the date it was received by the EEOC. (Docket No. 41-5).

rule. See Jorge-Colón v. Mandara Spa P.R., Inc., 685 F. Supp. 2d 280, 287 (D.P.R. 2010) (citing Quiñones González v. Asoc. de Condómines Playa Azul II, 161 D.P.R. 668 (2004)). JCJ never addresses the limitations question under Law 100, so I do not consider the timeliness of Commonwealth discrimination claims any further.

## II. Duty to Provide Reasonable Accommodations

García argues that JCJ violated its duty to provide him with reasonable accommodations for his disabilities under the ADA. JCJ counters that García never requested reasonable accommodations. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To state a claim under this requirement, a plaintiff must show that she (1) had a disability as defined by the ADA, (2) was able to perform the "essential functions" of the job, "with or without reasonable accommodation," and (3) that the employer "knew of her disability and did not reasonably accommodate it." Valle-Arce v. P.R. Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011). To sustain a failure to accommodate claim, plaintiffs must also demonstrate the reasonability of a proposed accommodation. Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010). This means there must be evidence that the accommodation will enable the plaintiff to perform the essential functions of the job. Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001). And "accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability . . . ." Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). "Indeed, simply in explaining how her proposal constitutes an 'accommodation,' the plaintiff must show that it would effectively enable her to perform her job." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001). To trigger the ADA, an employee cannot merely make "a mundane request for a change at the workplace"; the request must be "sufficiently direct and specific," and

"explain how the accommodation requested is linked to some disability." Id. at 261.

JCJ concedes that García was disabled, but denies that he made a reasonable request for an accommodation. The only evidence cited in either party's statement of facts which alludes to a request is García's testimony that he twice was allowed sitting breaks when he asked for them. (Def. St., ¶ 26). García never points to any other requests, nor articulates how any particular accommodation, requested or not, would enable him to perform his job's essential functions. I note that the cited portions of the deposition testimony, as well as Carrión's statements, could imply that García and Carrión once had some kind of disagreement about how much assistance García should need with lifting objects such as large televisions. But "[j]udges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Velásquez Rodríguez v. Mun'y of San Juan, 659 F.3d 168, 175 (1st Cir. 2011). García never squarely addresses the lifting issue, and certainly never explains the relationships among his disabilities, his job's essential functions, and his requested accommodations. Because García has not shown there is evidence from which a reasonable jury could find each element of an accommodation claim, JCJ is entitled to summary judgment. [10]

## III.  Retaliation for Requesting Accommodations

The ADA also prohibits retaliation against an employee for, among other grounds, having "opposed any practice made unlawful" by the act. 42 U.S.C. § 12203(a). Requesting a reasonable accommodation is protected from retaliation under the ADA. Valle-Arce, 651 F.3d at 198. But to trigger an employer's obligations under the ADA, a request must be "sufficiently direct and specific," and "explain how the accommodation requested is linked to some disability." Reed, 244 F.3d at 261.

---

[10] Since this claim fails on the merits, I need not consider JCJ's argument that a failure to accommodate claim was outside the scope of the EEOC charge, or that it is outside the statute of limitations.

García cannot establish a prima facie case of retaliation for requesting accommodations because, as explained above, he has not shown a triable question of whether he made any cognizable requests for accommodation. While García need not establish the underlying ADA violation—for instance, the request may have imposed an undue burden on the employer—he has still failed to provide evidence showing that he even made a request within the meaning of the ADA. JCJ is therefore entitled to summary judgment on the retaliation claim.[11]

## IV. Disability Discrimination

I next turn to García's claim that JCJ terminated him because of his disability. The ADA prohibits discrimination in the "terms, conditions, and privileges of employment" on the basis of disability. 42 U.S.C. § 12112(a). To prevail, an employee must prove "that he (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on his disability." Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011). "An essential function is one that 'bear[s] more than a marginal relationship to the job at issue.'" Colón-Fontanez v. Mun'y of San Juan, 660 F.3d 17, 33 (1st Cir. 2011) (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993)). Relevant evidence of whether a function is essential includes the employer's judgment regarding functions, pre-existing written job descriptions, and the work experience of past and current holders of similar positions. Mulloy v. Acushnet Co., 460 F.3d 141, 147 (1st Cir. 2006). Discriminatory motive may be proven either by direct evidence or by using the *McDonnell Douglas* evidentiary framework. Id. Direct evidence includes "[c]omments which, fairly read, demonstrate that a decisionmaker made, or intended to make, employment decisions based on forbidden criteria." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 61 (1st Cir. 2000) (in

---

[11] Again, I need not consider the timeliness of this claim as it fails on the merits.

ADEA case). On the one hand, the bare possibility of an innocent explanation for the statement does not make it any less direct. Id. However, "inherently ambiguous statements do not qualify as direct evidence." Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 65 (1st Cir. 2002).

JCJ concedes that García is disabled under the ADA, but argues that García cannot show he was qualified to perform his job's essential functions. JCJ asserts that García's "duties" included performing his job standing up, using stairs, crouching, and carrying large objects. (Docket No. 41, p. 13). They argue he was not qualified to do this because (1) he "simply was *not able* to handle heavy merchandise" without help from other employees, and (2) he continued to work for JCJ without complaint despite being told that if "complications with [his] condition" interfered with his work, he should stop working. (Docket No. 41, p. 13-14; Pl. St., ¶ 30) (emphasis in original). García argues that since JCJ employed him off and on for years with his lifelong disability and its attendant limitations, a jury could infer that he was qualified to perform his job's essential functions. (Docket No. 50, ¶ 22). I find García's position sufficient to survive JCJ's challenge at this stage. Although García bears the ultimate burden of proving that he was qualified for the position, JCJ has not articulated how any of the duties it argues García was unable to perform were *essential*; thus, there is at least a genuine dispute regarding what the essential requirements of García's job were, and the extent to which he (or another employee) could legitimately be expected to carry out particular tasks unaided.

Finally, as evidence of JCJ's intent to discharge him on the basis of disability, García refers to a comment recounted in his deposition testimony—the same comment JCJ relied on as evidence of his inability to perform his job functions:

Q       . . . Did you ever carry anything like a Plasma TV into the storage?
A       Well, of course. I had to. That was the job. As he always said, *"If you've*

> *got complications with your condition, and you see you can't do anymore, then obviously you can't working."*
>
> Yeah, I had to carry Plasmas. It was a good job, but I liked... cause I liked what I was doing, I loved it, but it's hard work.

(Docket No. 50, ¶ 53; Docket No. 50-3, p. 77) (emphasis added, *sic* throughout).  While this testimony is far from conclusive—for instance, it is unclear when the quoted comment was made, or in regards to what—I find that a jury could rationally view this comment as evidence of a forbidden motive.  Discussing whether García could "obviously" continue working depending on the extent of "complications with [his] condition" suggests there was a link between García's disability and his continued employment at JCJ.  And while additional evidence placing the statement in context could undermine this reading, the task of weighing conflicting evidence belongs to the factfinder, and not the court at summary judgment.  By the same token, JCJ's evidence of its disciplinary reasons for terminating García only creates a jury question on the matter.  In short, there are triable questions as to all disputed elements of García's discriminatory termination claim, and JCJ is not entitled to summary judgment on it.

**V.     Hostile Working Environment**

García argues he was the subject of name-calling, ridicule, and insult on the basis of his race and disability, resulting in a hostile work environment.  (Docket No. 50, p. 7-16).  To prevail on a hostile environment theory, García must "show that his 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment.'" Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (alterations in original).  An employer's liability under Law 100 is generally coextensive with that under Title VII, and includes hostile work environment claims. See Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 26 n. 10 (1st Cir. 2011) (applied to

sexual harassment under both statutes).

JCJ argues that García's hostile environment claims are barred because his EEOC charge (1) did not refer to a "hostile work environment" or "continued conduct" and (2) listed the earliest date of discrimination as April 1, 2008. (Docket No. 61, p. 4-5). But even if factually accurate,[12] JCJ's reasoning stops short of reaching the desired conclusion. "[T]he scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the [agency] investigation could reasonably be expected to uncover." Davis v. Lucent Technologies, Inc., 251 F.3d 227, 223 (1st Cir. 2001). Thus, courts may "look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation." Thornton, 587 F.3d at 32. JCJ never articulates how any of the facts underpinning García's hostile environment theory were outside the scope of a reasonable investigation of García's charge. Without more analysis, the mere absence of the phrases "hostile work environment" and "continued conduct" cannot establish that JCJ is entitled to judgment as a matter of law. Nor is the "artificial cut-off" of April 1, 2008 relevant in any way to the scope of the agency investigation. See Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006). Finally, I note that JCJ never explains how any of this applies to García's Law 100 claim, which is not subject to the same federal exhaustion analysis.

I discern no substantive challenge to García's hostile work environment claims, and as discussed above, JCJ is not entitled to dismissal on exhaustion grounds. Therefore, I find that JCJ is not entitled to summary judgment on them.

---

[12] Neither García nor JCJ provide an English translation of the EEOC charge's allegations, but they never dispute its contents. I therefore assume for this analysis that JCJ's description is correct.

## VI.     Unjust Dismissal under Law 80

García also argues that he is entitled to an indemnity for termination without just cause under Law 80. Law 80 "requires employers to compensate employees who are discharged without just cause." Baltodano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 41–42 (1st Cir. 2011). An employee who establishes that he was discharged shifts the burden of persuasion to the employer to prove that the discharge was justified. Id. Just causes for termination include those related to "the proper and normal operation of the establishment." 29 L.P.R.A. § 185b. Since JCJ bears the ultimate burden of persuasion to establish a just cause, it is not entitled to summary judgment "unless the evidence [it] provides on that issue is conclusive." See Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998) (discussing affirmative defenses at summary judgment).

JCJ points to the disciplinary admonishments and Carrión's statement under penalty of perjury as evidence of its just cause in deciding to terminate García. But García has established a triable question as to whether his termination was motivated by discrimination; since JCJ's motive is in genuine dispute, its evidence of just cause is necessarily inconclusive. Therefore, JCJ is not entitled to summary judgment on this claim. See also Oliveras Zapata v. Univision P.R., Inc., Civil No. 09-1987 (BJM), 2011 WL 4625951, at *21 (D.P.R. Oct. 3, 2011).

## VII.    Unpaid Wage Claims

García's complaint also refers to unpaid wages and compensation for break and vacation time that JCJ allegedly owed him. (See Docket No. 1, ¶¶ 74-76). JCJ argues that the complaint did not give sufficient notice of these claims or of a legal theory for their recovery, and that in any case García had no evidence supporting them. (Docket No. 41, p. 31-32). García did not point to any such evidence or otherwise address the claim in his opposition; thus, even assuming a claim was adequately pleaded, JCJ is entitled to summary judgment on it. See also Colón-

Fontanez, 660 F.3d at 46 (1st Cir. 2011) (plaintiff "cannot bury a blatantly inadequately pled claim in [his] complaint on the hope that it might spring to life like a forgotten Hydra-head . . . .").

## VIII. Article 1802 Claims

JCJ argues that García's tort claims are time-barred. Article 1802 of the Civil Code establishes liability for "[a] person who by an act or omission causes damage to another through fault or negligence." 31 L.P.R.A. § 5141. Actions for "obligations arising from the fault or negligence mentioned in section 5141" are subject to a one-year statute of limitations. 31 L.P.R.A. § 5298; Ramos Lozada v. Orientalist Rattan Furniture, Inc., 130 D.P.R. 712, 718, 1992 P.R.-Eng. 755,597. An action under Article 1802 accrues, starting the one-year clock running, when "the aggrieved party knows (or should have known) of both his injury and the identity of the party who caused it." González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009).

Here, García first sued on June 23, 2010; thus, only those claims that accrued after June 23, 2009 are timely. (See Docket No. 1). It is undisputed that García was fired in late April 2009. Since García filed suit over a year after his termination, he has the burden of proving that he lacked knowledge of the requisite elements until a later date. See Torres v. E.I. DuPont de Nemours & Co., 219 F.3d 13, 19 (1st Cir. 2000). But García's opposition to summary judgment does not address his Article 1802 claims at all, and offers no argument for finding that the statute of limitations was tolled. Because García does not meet this burden, JCJ is entitled to summary judgment on the Article 1802 claims.

## IX. Scope of Damages

Finally, JCJ offers a potpourri of points regarding the scope of damages García should be permitted to recover, apparently in response to García's deposition testimony regarding the

psychological treatment he sought following the store's April 2009 robbery. (Docket No. 41, p. 32-33). Specifically, JCJ notes that (1) worker's compensation is the exclusive remedy for any damages resulting from the robbery, (2) evidence of García's psychiatric treatment for the robbery should be excluded, (3) García has since applied for Social Security disability benefits, and (4) García never sought any other psychiatric treatment.

As for the first three points, García's complaint does not appear to state any claims for damages related to the robbery, making the question of what his remedy should be irrelevant. Similarly, noting that García has applied for Social Security disability benefits, JCJ asks the court to "ensure that he does not seek redress for incidents due to which he is seeking compensation from the Social Security Administration." (Docket No. 41, p. 33). Essentially, JCJ seeks to exclude testimony or evidence regarding other injuries that are not part of García's case. Since the proposed pretrial order has not yet been submitted, I find these issues premature; in any case, they call for evidentiary determinations that are not subject to summary judgment.

JCJ also asserts that "[a]ccording to his own admissions," treatment García received in the United States "is the only professional psychiatric supervision he has sought for his damages and that it is related to the effects that the robbery had on him. . . . Therefore, he will simply not be able to prove that he suffered any emotional or psychological damages in connection with his termination." (Docket No. 41, p. 33) (citation omitted). JCJ's conclusion relies on an incorrect assumption, however; plaintiffs are not required to either seek medical treatment or offer expert testimony to prove damages in hostile environment cases. See Aponte-Rivera v. DHL Solutions (USA), Inc., 650 F.3d 803, 810-811 (1st Cir. 2011). Alternatively, JCJ's argument might be read to assert that there is no evidence, expert or not, from which a jury could find that García suffered emotional or psychological distress because of discrimination. Problematically, García does not address the damages question at all in his opposition to summary judgment. But if this

is JCJ's asserted position, I find its treatment of the matter too cursory and lacking in analysis to meet its initial responsibility of demonstrating the absence of evidence on this issue, or indeed of putting García on notice of this ground for summary judgment. Therefore, JCJ is not entitled to summary judgment on the issue of emotional damages.

## CONCLUSION

For the foregoing reasons, JCJ's motion for summary judgment is **GRANTED IN PART.** Summary judgment as to liability on (1) García's federal and Commonwealth disability discrimination claims based on his termination, (2) his federal and Commonwealth hostile work environment claims, and (3) his Law 80 unjust dismissal claim, as well as with regard to the scope of damages that García may prove, is **DENIED**. García claims for (1) failure to accommodate, (2) retaliation for requesting accommodation, (3) unpaid wages, and (4) Article 1802 liability are **DISMISSED WITH PREJUDICE.** Furthermore, García is **ORDERED** to file a certified translation of the verified complaint (Docket No. 1) within **SEVEN (7) DAYS**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of March, 2012.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge